UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICHOLAS ARNOLD SCHOCK,

     Plaintiff,

v.                                 CASE NO. 8:23-cv-512-SDM-AEP

SHERIFF KURT A. HOFFMAN, et al.,

     Defendants.

_____/

# O R D E R

     Schock's complaint alleges that the defendants violated his civil rights by interfering with his legal mail during his detainment in the Sarasota County jail. Schock moves for both leave to proceed *in forma pauperis* and a preliminary injunction. (Docs. 2 and 3)  The Prisoner Litigation Reform Act ("PLRA") requires dismissal of an *in forma pauperis* prisoner's case "if the allegation of poverty is untrue" or if the case "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e).  Although the complaint is entitled to a generous interpretation, *Haines v. Kerner*, 404 U.S. 519 (1972) (*per curiam*), Schock must file an amended complaint.

     First, Schock lists Sheriff Kurt A. Hoffman as a defendant, but he asserts no fact showing the sheriff 's personal involvement.  Schock cannot pursue an action under Section 1983 against a person only because that person is the supervisor of someone

who allegedly wronged Schock.  The complaint must assert facts showing the direct and active involvement of each defendant in the alleged deprivation of Schock's civil rights.  Schock cannot base a Section 1983 claim on *respondeat superior*.  *Monell v. N.Y.C. Dep't of Social Services*, 436 U.S. 691, 694 (1978).  *See also Goebert v. Lee County*, 510 F.3d 1312, 1331 (11th Cir. 2007) ("We do not recognize vicarious liability, including *respondeat superior*, in § 1983 actions.").  Moreover, Schock states that the acts on which his claims are based (as detailed below) were committed contrary to "the rules of the facility." (Doc. 1 at 5)  Consequently, the complaint asserts a claim against Sheriff Kurt A. Hoffman in neither his individual nor his official capacity.

Second, Schock alleges that, on numerous occasions while detained in the Sarasota County jail, he "received his legal mail opened, unsealed, and visually pry'd into" and he "was not present to inspect, observe, or verify the contents or observe who did open his clearly marked 'legal mail.'" (Doc. 3 at 5)  Schock certainly retains some First Amendment protections, specifically including the right to receive and send mail, but the First Amendment right to send and receive mail is not unrestricted.  Prisons may adopt regulations that infringe constitutional rights if the regulations are "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989), *citing Turner v. Safley*, 482 U.S. 78, 89 (1987).  S*ee also Procunier v. Martinez*, 416 U.S. 396 (1974).  Whether censorship of an inmate's mail is appropriate depends on the specific circumstances.  Therefore, the screening and censorship of Schock's mail states a claim upon which relief can be granted if the circumstances did not sufficiently raise security concerns justifying the defendants' intervention.

Nevertheless, as explained below, Schock must clarify his claim in an amended complaint.

## CLAIMS FOR RELIEF

Schock files both a civil rights complaint and a paper that is essentially a memorandum in support of both his complaint and his request for injunctive relief. (Docs. 1 and 3)  Under the heading "ARGUMENT" in the memorandum, Schock asserts both a "I. First Amendment claim" and a claim under "II. The "Fourth Amendment," and he identifies acts he labels "III. Criminal Matter" but which he disavows intending to pursue a criminal action.  (Doc. 3 at 5, 7, and 9)

## I.  First Amendment Claim:

In his claim under the First Amendment, Schock alleges that his "legal mail" was opened outside of his presence, that his grievances were ignored or denied, that his access to the law library was restricted, and that he was denied access to a notary. Schock identifies "two responses from the Florida Bar" (Doc. 3 at 6) as the "legal mail" that was opened outside of his presence.  Schock may be able to assert a First Amendment claim under these facts, as explained in *Al-Amin v. Smith*, 511 F.3d 1317 (11th Cir. 2008), which Schock cites.

However, Schock cannot pursue a claim — to the extent the complaint may assert a claim — based on the inadequacy of the grievance procedure.  *See, e.g., Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) ("[A]n inmate has no constitutionally-protected liberty interest in access to [an inmate grievance] procedure."); *Thomas v.*

*Warner*, 237 F. App'x 435, 438 (11th Cir. 2007)* ("Plaintiff's allegations that prison officials failed to comply with the prison's voluntary grievance procedures does not state a due process claim.").

Schock asserts no fact to support a claim — to the extent the complaint may assert a claim — of denial of access to the courts based on his restricted access to the law library.  A confined person must have both "meaningful access to the courts," *Bounds v. Smith*, 430 U.S. 817, 823 (1977), and "a reasonably adequate opportunity to file non-frivolous legal claims challenging their convictions or conditions of confinement.  But it is that capability, rather than the capability of turning pages in a law library, that is the touchstone."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996).  As a consequence, a detainee's access to the courts must be reasonable — not unfettered — and physical access to "turn pages in a law library" is not required.  To state a claim of denial of access to the courts, Schock must show that he has incurred an "actual injury."  To prevail on an "access to the courts" claim, Schock must show that the defendants' conduct is precluding his pursing a non-frivolous direct appeal, a collateral attack on a sentence, or a challenge to conditions of confinement.  *Wilson v. Blankenship*, 163 F.3d 1284, 1290 (11th Cir. 1998).  As currently drafted, the claim of denial of access to the court is insufficiently pleaded.

---

* "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

Lastly, Schock fails to allege that his inability to have his papers notarized precluded his filing papers with the state courts.  Moreover, this district court is unaware of such a requirement.

## II.  Fourth Amendment Claim:

Schock alleges that (both outside of and within his presence) his mail was opened, searched, and sometimes portions of the contents and envelope were seized contrary to his rights under the Fourth Amendment.  Schock has no Fourth Amendment protection against unreasonable search and seizure while confined.  *See, e.g.*, *Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984) ("[W]e hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."); *Padgett v. Donald*, 401 F.3d 1273, 1278–79 (11th Cir. 2005) ("Prisoners 'do not forfeit all constitutional protections by reason of their conviction and confinement in prison,' *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S. Ct. 1861, 1877, 60 L. Ed. 2d 447 (1979), but they do not enjoy the same Fourth Amendment rights as free persons . . . .").

## III.  Criminal Matter:

Schock alleges that "the acts committed against [him] by Respondents are not only a violation of [his] Constitutional guarantees, but also criminal under United States Code, Title 18, Chapter 83 . . . ."  (Doc. 3 at 9).  As a private citizen, Schock lacks the capacity to commence a federal criminal prosecution, a mechanism available

exclusively to the prosecutor, as *McGinley v. Fla. Dep't of Highway Safety and Motor Vehicles*, 438 F. App'x 754, 756–57 (11th Cir. August 8, 2011), explains:

> Although the McGinleys could have brought a wrongful death suit against those people they believed responsible for Kevin's death, the McGinleys could not have brought criminal charges against them. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *State v. Cain*, 381 So. 2d 1361, 1367 (Fla.1980) ("[T]he discretion of a prosecutor in deciding whether and how to prosecute is absolute in our system of criminal justice."). Because only [the prosecutor] could have brought charges, the McGinleys did not have a right of access to the courts to bring criminal charges and they suffered no legal injury as a result of his actions. And without a legal injury the McGinleys are without standing to pursue this claim.

## REQUESTED RELIEF

Schock requests both damages and injunctive relief.  Most of his requested relief is unavailable.  Schock requests moratory damages (for "a breach of public trust"), nominal damages, punitive damages, and compensatory damages (for "pain and suffering").  Schock asserts no basis for moratory damages, and because he asserts no actual physical injury, Schock cannot recover compensatory damages.  42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .")  Schock is limited to pursuing nominal damages, which is limited to one dollar, not the $777 he requests.  *See Akouri v. Fla. Dep't of Transp.*, 408 F.3d 1338, 1342–46 (11th Cir. 2005) (recognizing that absent any evidence proving compensatory damages, a court is justified in limiting a plaintiff's

award of nominal damages to one dollar); *Al-Amin v. Smith*, 511 F.3d 1317, 1335 (11th Cir. 2008) ("Our precedent thus recognizes the award of nominal damages for violations of the fundamental constitutional right to free speech absent any actual injury."). And if he has sufficient proof that the remaining defendant acted maliciously, Schock might recover punitive damages. *See Hoever v. Marks*, 993 F.3d 1353, 1358–59 (11th Cir. 2021) ("Punitive damages do not compensate plaintiffs for injuries suffered[, r]ather, their purpose 'is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior.'") (quoting *Memphis Cmty Sch. Dist. V. Stachura*, 477 U.S. 200, 306 (1986)); *Oliver v. Falla*, 258 F.3d 1277, 1280, n.2 (11th Cir. 2001) (noting that, in the absence of malicious conduct, punitive damages are not warranted).

Lastly, injunctive relief is not available because, according to his notice of change of address (Doc. 5), Schock is no longer detained in the Sarasota County jail. As explained by *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007) (footnote omitted), *abrogated on other grounds, Sossamon v. Texas*, 563 U.S. 277 (2011):

> The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief. *McKinnon [v. Talladega Cty., Ala.,]*, 745 F.2d [1360,] 1363 [(11th Cir. 1984)]; *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (*per curiam*). The reason for this rule is that injunctive relief is "a prospective remedy, intended to prevent future injuries," *Adler [v. Duval Cty. School Bd.]*, 112 F.3d [1475,] 1477 [(11th Cir. 1997)], and, as a result, once the prisoner has been released, the court lacks the ability to grant injunctive relief and correct the conditions of which the prisoner complained. *See, e.g., Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (*per curiam*) (stating that a prisoner's past exposure to sub-par conditions in a prison "does not constitute a present case or controversy involving injunctive relief").

*See also Robbins v. Robertson*, 782 F. App'x 794, 799 (11th Cir. 2019) ("'The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief ' even when 'there is no assurance that he will not be returned to the jail.'") (quoting *McKinnon v. Talladega Cty., Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984)); *Stanley v. Broward Cty. Sheriff*, 773 F. App'x 1065, 1069 (11th Cir. 2019) ("Where past harm has occurred but 'the threat of future harm dissipates, the plaintiff 's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury.'") (quoting *Adler v. Duval Cty. School Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997)).

* * * *

Schock must file an amended complaint, which must be complete because an amended complaint supersedes the original complaint and, as a consequence, "specific claims made against particular defendants in the original complaint are not preserved unless they are also set forth in the amended complaint." *Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009). *See Fritz v. Standard Sec. Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal rules, an amended complaint supersedes the original complaint."). *See also Lane v. Philbin*, 835 F.3d 1302 n.1 (11th Cir. 2016) (describing as "irregular" a district court's construing together both an original and an amended complaint). In other words, the amended complaint must be fully complete within itself and not rely upon allegations in an earlier complaint.

The civil rights complaint (Doc. 1) is **DISMISSED**, but the dismissal is **WITHOUT PREJUDICE** to the filing of an amended complaint within **THIRTY (30) DAYS**. The failure to timely file an amended complaint will result in the dismissal of this action without further notice. The motion for leave to proceed *in forma pauperis* (Doc. 2) is **GRANTED**. The motion (Doc. 3) for injunctive relief is **DENIED AS MOOT**.

**<u>A CAUTION TO MR. SCHOCK</u>**

Litigation in federal court is difficult and requires timely compliance with applicable rules, including the Federal Rules of Civil Procedure, the Local Rules, the Federal Rules of Evidence, and several procedural, discovery, and other orders. A judge cannot assist a party, even a *pro se* party, in conducting an action, and a plaintiff enjoys only a limited opportunity to amend the complaint. Therefore, Schock is strongly advised — before amending the complaint — to obtain legal advice and assistance from a member of The Florida Bar.

ORDERED in Tampa, Florida, on October 30, 2023.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 9 -